**FILED**

**January 30, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:15 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **VICTORIA KAY WAXSTEIN,** | ) | **Docket No.: 2016-03-1015** |
| Employee, | ) | |
| **v.** | ) | |
| **ARCHITECTURAL GRAPHICS, INC.,** | ) | **State File No.: 79729-2015** |
| Employer, | ) | |
| **And** | ) | |
| **U.S. FIRE INSURANCE CO.,** | ) | **Judge Pamela B. Johnson** |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS
### (Decision on the Record)

This matter came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Victoria Kay Waxstein seeking a decision on the record in lieu of convening an evidentiary hearing. Architectural Graphics, Inc. did not file a Response to the Request for Expedited Hearing and did not request an evidentiary hearing. The Court issued a Docketing Notice on January 17, 2017, listing the documents to be considered. This Court gave Ms. Waxstein and Architectural Graphics until January 26, 2017, to file objections and/or position statements. Ms. Waxstein filed a Position Statement on January 25, 2017. Architectural Graphics did not file objections but previously filed a Position Statement on October 10, 2016.

Upon careful consideration of the record, this Court finds it needs no additional information to determine whether Ms. Waxstein is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2016), Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2016), the Court decides this matter upon a review of the written materials.

The central legal issue is whether Ms. Waxstein is likely to prevail at a hearing on the merits on entitlement to additional medical benefits, specifically treatment for an

1

alleged low back injury. For the reasons set forth below, the Court holds Ms. Waxstein came forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits. Accordingly, this Court concludes Ms. Waxstein is entitled to the requested medical benefits.

## History of Claim

A review of the written materials revealed the following facts. On September 28, 2015, Ms. Waxstein left work at Architectural Graphics and fell in the parking lot while walking to her car. As a result of the fall, she allegedly sustained injury to her right leg and lower back. Architectural Graphics accepted the claim as compensable and provided authorized medical treatment for the right leg injury. However, it disputed the alleged lower back injury and, as such, it provided no medical treatment for the lower back.

The next day, Ms. Waxstein saw Dr. Roy E. Kuhl, Jr., an authorized treating physician (ATP), and reported she "stepped into a hole yesterday, severely twisting her right ankle . . . No other injuries occurred." (Ex. 4.) Dr. Kuhl ordered and reviewed x-rays, which showed a right ankle distal fibula fracture. Dr. Kuhl referred Ms. Waxstein to orthopedic physician Dr. Mark Thomas.

Later that same day, Dr. Thomas, also an authorized provider, evaluated Ms. Waxstein. She told Dr. Thomas, "while leaving work in the dark last night she stepped, she thinks[,] in a pothole and sustained an inversion injury with immediate onset of lateral ankle pain . . . She has no other somatic complaints." (Ex. 6.) Dr. Thomas confirmed a right ankle fracture of the lateral malleolus and ordered a short leg cast.

Ms. Waxstein went to East Tennessee Medical Group Urgent Care Clinic the following day and reported a history of "recent fx R leg, at time of fall may have hurt L leg." (Ex. 5.) The attending provider ordered a DVT ultrasound of the left leg, which was negative for evidence of deep venous thrombosis.

Approximately two weeks later, Ms. Waxstein returned to Dr. Kuhl and reported she "also landed on her left side" and "[a]bout a day after the fall, she started having left lateral hip pain with pain radiating down the left leg into the left anterior shin to the ankle . . . She denies back pain." *Id.* Dr. Kuhl noted,

> A fall 2 weeks ago with left leg pain and symptoms that are consistent with lumbar radiculopathy. We will proceed with x-rays of the left hip and lower leg, and I am going to go ahead and ask for an MRI of the lumbosacral spine.

*Id.*

When Ms. Waxstein returned to see Dr. Thomas for her one-month follow-up, she reported, "within 24 hours of the ankle injury[,] [s]he began having pretty severe sciatic symptoms in the left lower extremity." *Id.* Dr. Thomas noted,

> I have spoken with the patient about the natural history of sciatic symptoms. This does seem to be work related . . . We will put her into a CAM boot for the right ankle . . . and we will defer on any other treatment for the sciatica until we have a little more healing of the fracture. Once that is healed, if she is having continued symptoms, would begin more aggressive treatment of her sciatic symptoms.

*Id.* Thereafter, Ms. Waxstein transitioned to an air cast splint and weight bearing on the right ankle. On January 6, 2016, Dr. Thomas released Ms. Waxstein to unrestricted duties at work, assigned maximum medical improvement with no permanent impairment, and instructed her to return as needed.

Eight months later, Ms. Waxstein returned to Dr. Thomas with complaints of persistent pain in the Achilles tendon region and persistent numbness down her left leg and into her left foot since the fall injury. Dr. Thomas recommended a simple exercise program for the Achilles and peroneal tendinitis. He further obtained lumbar spine x-rays, which demonstrated significant L4-5 degenerative changes with L3-4 degenerative spondylolistheses. Dr. Thomas believed the changes to be chronic but ordered a lumbar MRI to evaluate if there were any acute changes to explain the numbness. *Id.*

Architectural Graphics submitted the recommended lumbar MRI to Utilization Review (UR). (Ex. 7.) After review of the single office note and physician's order in which Dr. Thomas ordered the lumbar MRI, the UR provider, Dr. Robert E. Holladay, was unable to recommend the requested treatment. Dr. Holladay noted,

> In this case, the claimant presents with a history of right ankle fracture and left leg numbness that goes down to the foot. The claimant denies pain or weakness. Examination is positive for Achilles and peroneal tendinitis. There is limited documentation of neurologic compromise on examination related to the lumbar spine. Lumbar complaints or conservative care addressing the lumbar spine are not outlined. Without consistent radiculopathy, the current request is not supported per guidelines. The medical necessity is not established. Non-certification is recommended.

*Id.* Based upon the UR non-certification, Architectural Graphics denied the recommended lumbar MRI scan. Subsequently, Ms. Waxstein underwent a nerve conduction and electrodiagnostic study (NCS/EMG), which revealed evidence of chronic L4 radiculopathy, left lumbosacral plexopathy, or chronic femoral neuropathy. (Ex. 11.) Based upon the results of the testing, the NCV/EMG provider, Dr. L. Scott Sole,

3

recommended a MRI of the lumbar spine and left pelvis, which Architectural Graphics did not authorize.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Waxstein need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016) provides that "[t]he employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Furthermore, a work-related injury "causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment." Tenn. Code Ann. § 50-6-102(14)(C) (2016). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016).

Tennessee Code Annotated section 50-6-204(b)(1) provides that "[w]here the nature of the injury . . . is such that it does not disable the employee but reasonably requires medical [or] surgical . . . treatment or care, medicine [or] surgery . . . shall be furnished by the employer." Section 50-6-102(14)(E) provides, "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Moreover, "treatment recommended by a physician . . . selected pursuant to [§ 50-6-204(a)(3)] or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H) (2016); *see also Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17 (Aug. 31, 2016).

Here, the sole issue is the causal relationship and medical necessity of medical treatment for the alleged low back injury, and specifically for the lumbar MRI recommended by the ATP. Thus, at the Expedited Hearing stage, where the issue concerns medical treatment, Ms. Waxstein has the burden of presenting sufficient evidence to show she is likely to prevail at trial in establishing that the recommended treatment was causally related to and reasonably required as a result of the work injury.

4

*See* Tenn. Code Ann. § 50-6-204(b)(1); *see also Coolidge v. City Winery Nashville, LLC, et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 46, at *16-17 (Sept. 23, 2016).

This Court is presented with competing medical opinions on the issues of causal relationship and medical necessity of the recommended MRI. On the issue of causal relationship to the work injury, the ATP stated, "I have spoken with the patient about the natural history of sciatic symptoms. This does seem to be work related." Based upon the degenerative changes noted on x-ray, Architectural Graphics argued the alleged low back injury did not arise primarily out of or occur in the course and scope of the employment. However, Architectural Graphics did not offer expert proof on the issue of causation. As previously noted, the opinion of the ATP is presumed correct on the issue of causation. Therefore, the Court finds Ms. Waxstein appears likely to establish that the recommended MRI is causally related to her work injury.

Turning to the issue of medical necessity, this Court is presented with two opinions. The authorized treating physician, Dr. Thomas, indicated he believed the lumbar degenerative changes to be chronic but ordered a lumbar MRI to evaluate if there were any acute changes to explain Ms. Waxstein's radicular symptoms. In contrast, the UR provider, Dr. Holladay, stated,

> There is limited documentation of neurologic compromise on examination related to the lumbar spine. Lumbar complaints or conservative care addressing the lumbar spine are not outlined. Without consistent radiculopathy, the current request is not supported per guidelines. The medical necessity is not established.

When weighing expert medical proof, this Court has the discretion to determine which testimony to accept when presented with conflicting expert opinions. *See Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. Workers' Comp. Panel Sept. 5, 1996); *Johnson v. Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). Further, when there is conflicting medical testimony, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Here, the first factor – qualifications of the experts – weighs equally in favor of either physician, as both physicians are orthopedic physicians. The second factor – the circumstances of their examination – favors Dr. Thomas, who personally examined Ms. Waxstein on multiple occasions over the course of several months. The third factor – the information available to them – is also favorable to Dr. Thomas, who had the opportunity to: personally observe Ms. Waxstein and assess her credibility; physically examine Ms. Waxstein and make objective findings, order and review films from various diagnostic

5

testing; and obtain historical information not readily available in the medical records. The final factor – the evaluation of the importance of that information by other experts – also weighs in favor of Dr. Thomas, as his medical records demonstrate the radicular complaints reported by Ms. Waxstein since her fall, while Dr. Holladay's consideration was limited to a single office visit. This Court is persuaded by Dr. Thomas. Accordingly, this Court concludes that Dr. Holladay's opinion failed to rebut the presumption of correctness afforded Dr. Thomas, the ATP, on the issue of causation and medically necessity.

Based upon a review of the written materials, this Court concludes Ms. Waxstein came forward with sufficient evidence that she is likely to prevail at a hearing on the merits that the work injury caused and medically necessitated the need for the recommended MRI.

Additionally, Architectural Graphics shall continue to provide Ms. Waxstein with medical benefits in accordance with Tennessee Code Annotated section 50-6-204 (2016), and Dr. Thomas shall remain the authorized treating physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Architectural Graphics shall provide Ms. Waxstein with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204 (2016), to include authorization of the MRI scan recommended by Dr. Thomas. Medical bills shall be furnished to Architectural Graphics or its workers' compensation carrier by Ms. Waxstein or the medical providers. Dr. Thomas shall remain the authorized treating physician.

2. This matter is set for a Scheduling Hearing on **April 6, 2017**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 30th day of January, 2017.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

## APPENDIX

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed the following documents, marked as exhibits for ease of reference:

**Exhibits:**
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Architectural Graphics' Position Statement
4. Medical Records of Dr. Roy Kuhl, East Tennessee Medical Group
5. Medical Records of East Tennessee Medical Group, Urgent Clinic
6. Medical Records of Dr. Mark K. Thomas, Ortho Tennessee
7. Utilization Review Denial
8. First Report of Work Injury
9. Request for Expedited Hearing
10. Affidavit of Victoria Waxstein
11. Notice of Filing Medical Records and Medical Records of Dr. L. Scott Sole
12. Docketing Notice for a Decision on the Record
13. Ms. Waxstein's Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 30th day of January, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Brad C. Burnette, Esq., Employee's Attorney | | | X | bradburnette@foxandfarleylaw.com |
| James H. Tucker, Esq., Employer's Attorney | | | X | jtucker@manierherod.com |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

8